UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAI LOR, | ) | No. EDCV 05-770 FFM |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying her application for Supplemental Security Income payments under Title XVI of the Social Security Act. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the case management order entered on January 20, 2006, the parties filed a Joint Stipulation detailing each party's arguments and authorities on May 12, 2006. The Court has reviewed the administrative record ("AR") and the Joint Stipulation ("JS"). For the reasons stated below, the decision of the Commissioner is affirmed.

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007 and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

On January 14, 2003, plaintiff filed her application with the Social Security Administration alleging an onset of disability commencing January 14, 2003. (AR 50). Plaintiff's application was denied initially and on reconsideration. Plaintiff timely filed a request for hearing on September 8, 2003. A hearing was held on December 15, 2004. (AR 173-198). Administrative Law Judge Peter J. Valentino ("ALJ") presided over the hearing. Plaintiff, Soua Yeng Lor (plaintiff's father), and Jack Rothberg, M.D. (medical expert) testified at the hearing. The hearing resulted in a January 10, 2005 decision to deny benefits. (AR 12-16). Plaintiff filed a request for review of the hearing decision, which was denied by the Appeals Council on August 2, 2005.

Plaintiff filed her complaint on August 29, 2005.

## CONTENTIONS

1. Whether the ALJ properly considered the opinion of the treating physician;
2. Whether the ALJ properly considered the testimony of plaintiff's father;
3. Whether the ALJ properly concluded that plaintiff did not have a severe impairment; and
4. Whether the ALJ properly developed the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A. <u>Whether the ALJ Properly Considered the Opinion of the Treating Physician.</u>

Plaintiff claims that the ALJ failed to accept or reject a diagnosis of "mental retardation and cerebral palsy" by plaintiff's treating physician, Jow Shone Lee, M.D. (JS 3). The record establishes that Dr. Lee treated plaintiff from April 3, 2000 through November 6, 2000. (AR 120). During this time, he saw plaintiff twice, once on April 3, 2000 for a physical and once on November 6, 2000 for immunizations. (*Id.*). The record further reflects that Dr. Lee examined plaintiff on or about July 2, 2004, which examination is documented by a one page pediatric progress note. (AR 158). That progress note indicated that Dr. Lee found his examination of plaintiff to be normal in all respects except for "NEURO." Dr. Lee checked the abnormal box for "NEURO" and handwrote "mental retardation no neurological defects." Under "ASSESSMENT," Dr. Lee handwrote "mental retardation/cerebral palsy." The only clue contained in the pediatric progress note as to a basis for Dr. Lee's assessment is a handwritten notation near the top of the note that states "not able to communicate ([unintelligible mark] speech prob a mental retardation)." (AR 158). Significantly, Dr. Lee's files contain no record of any tests or examinations suggesting that plaintiff suffered from either mental retardation or cerebral palsy. Moreover, Dr. Lee's observation that plaintiff was not able to communicate is inconsistent with plaintiff's performance at school and the results of tests administrated by the multi-disciplinary evaluation team at Banning High School. (See AR 127-130).

1    In rejecting Dr. Lee's assessment, the ALJ relied on the testimony of Dr. Rothberg, who is board certified in psychiatry and neurology. (AR 14). After reviewing all the medical documentation, Dr. Jack Rothberg, the medical examiner, testified that "there's no credible history of a mental illness. What we have is a great deal of lack of cooperation and suspicion that she is not being completely putting forth her best effort." (AR 182). Dr. Rothberg further testified that "there's no history of any ongoing treatment for psychiatric condition." (*Id.*) The ALJ also discussed the Banning High School psychological evaluation and noted the conclusion of the evaluators that plaintiff "was not eligible for special education in the area of learning disability." (*Id.*).

A treating physician's opinion ordinarily is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527 and 416.927(d)(2). Here, Dr. Lee's "assessment" was not supported by any medical data and is inconsistent with other evidence in the record. Accordingly, the ALJ did not err in rejecting Dr. Lee's assessment.

B.   Whether the ALJ Properly Considered the Testimony of Plaintiff's Father.

Plaintiff's father testified that "because [plaintiff] has health problems, she is unable to do some [housework]." (AR 179). He also testified that plaintiff "has illnesses," and that there are times "when she is coughing and she is not able to walk." (AR 180). Plaintiff's father also testified that plaintiff had perfect attendance at High School and sometimes walked to school. (AR 180).

///

Plaintiff correctly asserts that the ALJ ignored the testimony of plaintiff's father altogether.  The ALJ is, of course, required to consider the testimony of friends and family members.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  By ignoring plaintiff's father's testimony, the ALJ erred.  Nonetheless, the Court finds any error harmless.  Significantly, the father's testimony was extremely vague as to plaintiff's health problems.  Moreover, no medical evidence in the record supported his assertions of any debilitating illness.  Most importantly, plaintiff's father's testimony that plaintiff sometimes walks to school and had a perfect attendance record at school seems inconsistent with the testimony that she had difficulty walking and could not perform household chores.  (See AR 180).  Finally, plaintiff's father made no mention of any mental retardation or cerebral palsy.  Thus, the Court concludes that it would be futile to remand the matter based on the ALJ's failure to specifically address the father's testimony.

C.  <u>Whether the ALJ Properly Concluded That Plaintiff Did Not Have a Severe Impairment.</u>

Plaintiff asserts, in addition to the arguments raised earlier, that the diagnosis of an IQ of 79 on the test of non-verbal intelligence, which places plaintiff in the borderline range, should be considered a severe impairment.  Plaintiff cites an Eighth Circuit opinion, *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001), in support of this assertion.  In *Hunt*, the Court found that borderline intellectual functioning is a "significant nonexertional impairment."  *Id.* at 624, 625-26, quoting *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999).

A severe impairment is defined as an impairment "which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The Court is unwilling to find as a matter of law that an IQ score of 79 is *ipso facto* a severe impairment.  *Cf. Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) ("although an IQ test can be 'useful in determining whether an applicant has a mental impairment . . . other information in the record which indicates the individual's ability

to function can be used to discredit the lone IQ score.'" (quoting *Holland v. Apfel*, 153 F.3d 620, 622 (8th Cir. 1998))).

Here, the record contains no evidence that plaintiff was significantly limited in her abilities to do basic work activities as a result of her IQ score or otherwise. The ALJ pointed out that plaintiff was considered not eligible for special education and that she performed well in some subjects at school. The Banning High School Multi-disciplinary Evaluation Team Report concluded that "educational, environmental, economic disadvantage and cultural, ethnic difference is considered to be the primary factor influencing [plaintiff's] educational difficulties." (AR 129). Therefore, the Court concludes that the ALJ's finding that plaintiff does not suffer from a severe impairment is supported by the record.

D.   Whether the ALJ Properly Developed the Record.

In cross examining the medical expert at the hearing, plaintiff's counsel asked if plaintiff's receipt of both A's and F's could possibly be from schizophrenia. In response the medical expert testified, "it's possible. I just don't have enough evidence." Plaintiff argues that the ALJ had a duty to further develop the record, presumably by ordering further medical examinations of plaintiff.

Although the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," *Smolen v. Chater*, 80 F.3d at 1288, that duty is triggered only where there is ambiguity about a documented, diagnosed illness during the relevant period. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record contains no diagnosis of schizophrenia. The medical examiner's statement that "it's possible" is not evidence. Under these circumstances, there was no duty to further develop the record.

///
///
///
///

**CONCLUSION**

For the foregoing reasons, the judgment of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: September 16, 2008

                                             / s / FREDERICK F. MUMM
                                                FREDERICK F. MUMM
                                             United States Magistrate Judge